**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| CITY OF COLUMBUS, *et al.*,<br><br>Plaintiffs-Appellees, and<br><br>BROOKE LEGLER,<br><br>Proposed Intervenor-Plaintiff-Appellee,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., *in his official capacity as Secretary of the United States Department of Health and Human Services*, *et al.*,<br><br>Defendants-Appellants. | No. 26-1938 |

## BROOKE LEGLER'S UNOPPOSED MOTION TO INTERVENE AS INTERVENOR-PLAINTIFF

Brooke Legler, a member of Plaintiff-Appellee Main Street Alliance ("MSA"), respectfully moves for leave to intervene in this appeal as an additional Plaintiff-Appellee. For the reasons explained below, Ms. Legler has a direct stake in the resolution of this appeal, as she depends on her ability to purchase affordable health coverage through the

Affordable Care Act Exchanges. MSA has represented her interest in this litigation, but it will terminate its operations at the end of the year and will no longer be able to advance her interest after that date. In order to avoid creating any threshold issues at the turn of the year that may delay this Court's resolution of this appeal, Ms. Legler seeks to intervene in this appeal now to protect her interest in defending the judgment of the district court. MSA, as a membership association, has supported its assertion of standing with declarations submitted by its member, Ms. Legler. The briefing in this appeal has addressed the parties' positions with respect to Ms. Legler's standing; no supplemental briefing would be required, then, if she were permitted to intervene.

The original Plaintiffs-Appellees, who are represented by the same counsel as Ms. Legler, consent to this motion. Counsel for the Plaintiffs-Appellees and for Ms. Legler have consulted with counsel for Defendants-Appellants, who report that, while preserving their arguments that Ms. Legler lacks standing, Defendants-Appellants do not oppose her motion to intervene on appeal.

## BACKGROUND

### I. Procedural Background

The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010) ("ACA"), establishes Exchanges through which individuals may purchase health insurance. In June 2025, the Centers for Medicare & Medicaid Services ("CMS") issued a final rule addressing various aspects of the operation of these Exchanges. 90 Fed. Reg. 27,074 (June 25, 2025). Numerous provisions in the rule would worsen the barriers to coverage on the Exchanges by making coverage more expensive or by heightening the administrative obstacles consumers face. JA117. If those provisions were to go into effect, the rule would increase the number of uninsured overall by 1.8 million. JA108. Younger and healthier people are more likely to drop from coverage, worsening the risk pool and leading to higher health insurance premiums, further exacerbating the problem of high costs, which in turn would cause additional people to become uninsured. JA108. This would increase uncompensated care, especially for safety net providers. JA109.

Several plaintiffs—including the Cities of Columbus, Baltimore, and Chicago, which provide safety net services; MSA, an association of

small business owners and entrepreneurs who depend on insurance coverage through the Exchanges; and Doctors for America ("DFA"), an association of physicians who treat patients covered through insurance plans offered on the Exchanges—brought suit to challenge the provisions of the final rule that would drive people off coverage or raise the cost of that coverage. JA77. The district court issued an order under 5 U.S.C. § 705 staying the operation of several provisions of the rule, finding that the Cities and MSA had standing to challenge them, but deferring judgment with respect to DFA's standing. JA284. In particular, the district court found that Ms. Legler "has established standing to sue in her own right, and therefore MSA also has associational standing to sue." JA291. Defendants appealed and sought a stay pending appeal; this Court denied that motion. *City of Columbus v. Kennedy*, No. 25-2012, 2025 WL 4948067, at *1 (4th Cir. Sept. 18, 2025). That appeal was dismissed after the district court's entry of final judgment.

After further briefing, the district court granted Plaintiffs' motion for summary judgment in part. JA62-67. CMS did not dispute standing after it produced the administrative record, other than to renew its

contention that DFA lacked standing. The court adhered to its determination that the Cities and MSA had standing and again found it unnecessary to address DFA's standing. *See* JA10-11. As relevant here, the district court held that four provisions were contrary to law, arbitrary and capricious, or both: (1) a provision denying ACA subsidies to persons who could not show that they had reconciled prior years' subsidies on their tax returns (the "failure-to-reconcile provision"); (2) a provision permitting insurers to market lower-value plans as meeting the standards for silver plans under the ACA (the "actuarial value provision"); (3) the shortening of the annual open enrollment period for the purchase of insurance on the Exchanges; and (4) the shortening of the period to resolve documentation inconsistencies were contrary to law, arbitrary and capricious, or both. JA30-31, JA40, JA43-44, JA53.

Defendants appealed the district court's judgment. JA854. With Plaintiffs' consent, Defendants moved for expedition of the appeal and requested that the Court issue a decision by the end of this year. This Court granted expedition. The appeal is fully briefed, and oral argument is scheduled for October 30, 2026.

On appeal, Defendants again dispute Plaintiffs' standing. *See* Opening Br. 29. As Plaintiffs have explained, however, each of the Plaintiffs would suffer an injury that is fairly traceable to Defendants' actions if the rule were permitted to go into effect, and that is redressable by the judgment in their favor. *See* Answering Br. 24-35.

## II. Ms. Legler's Interest in This Case

As has been demonstrated through the declarations already on file in this litigation, Brooke Legler is a small business owner and MSA member who resides in Wisconsin. JA136. She purchases individual health insurance through the Exchange. JA137. She has a chronic condition that requires her to take costly medication, including a biologic that costs approximately $10,000 per month. JA136-137. The increase in premiums that will result from the final rule would make it harder for her to afford the medications she needs to survive. JA117; JA138.

In the district court and in this Court, MSA has shown its standing as a membership association to challenge the CMS rule by proving the ways that the rule harms its member, Ms. Legler. For example, by permitting cheaper, but less comprehensive, plans to qualify at the "silver" level of coverage, the rule will lower tax credits across the board

for all subsidized enrollees in the ACA Exchanges, including Ms. Legler. *See* JA118-119; JA363; JA551-552. Ms. Legler needs to maintain comprehensive coverage that covers these medications, and she can only afford that coverage with the premium tax credits for which she is eligible under the ACA. JA137. Those subsidies are calculated in part on the basis of the cheapest "silver" plans available on the Exchange, so if the actuarial value rule were to go into effect, she would receive a lower tax credit and pay a higher net premium to maintain the same level of coverage. JA354.

The failure-to-reconcile policy, the shortening of the open enrollment period, and the shortening of time to resolve data matching issues would also harm Ms. Legler if they were permitted to go into effect. Hundreds of thousands of enrollees would drop coverage as a result of these policies, with the result being a worsening of the risk pool and higher gross and net premiums for equivalent coverage for those, like Ms. Legler, who remain in coverage. JA530; JA574; JA657-658. This "classic pocketbook injury" suffices to show her, and therefore MSA's, standing. *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 636 (2023).

Throughout the proceedings in the district court and throughout the briefing of this appeal, Ms. Legler's interests have been represented by MSA, as a judgment in MSA's favor would operate to protect her interest in retaining access to affordable, comprehensive health coverage through the Exchanges. MSA has recently determined, however, that it will cease operations as of December 31, 2026. This raises the possibility that Ms. Legler's interests would no longer be adequately represented by MSA after that date, given the likelihood that a decision in this appeal would not become final until after the end of the year. *See* Fed. R. App. 40(d). Ms. Legler accordingly seeks to intervene as a Plaintiff-Appellee to protect her interest in defending the district court's judgment that operates in her favor.

## LEGAL STANDARD

"No statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 276 (2022). "Without any rule that governs appellate intervention, [the Supreme Court has] looked elsewhere for guidance. Thus [it has] considered the policies underlying intervention in the district courts, including the legal 'interest' that a

party seeks to 'protect' through intervention on appeal." *Id.* at 277 (quoting Fed. R. Civ. P. 24(a)(2); other internal quotations omitted).

This Court, following the guidance of *Cameron*, resolves motions to intervene in an appeal by "consider[ing] a non-exhaustive list of factors—the timeliness of the [intervenor's] request, the interests the [intervenor] seek[s] to represent, the extent to which the existing parties adequately represent those interests, and the effect on the [intervenor] and the current parties of granting or denying intervention." *Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, 88 F.4th 495, 499 (4th Cir. 2023). "Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought." *Cameron*, 595 U.S. at 278–79; *accord Ass'n for Educ. Fairness*, 88 F.4th at 498.

## ARGUMENT

### I. The Intervention Request Is Timely

"Timeliness is an important consideration in deciding whether intervention should be allowed, but timeliness is to be determined from all the circumstances, and the point to which a suit has progressed is not solely dispositive." *Cameron*, 595 U.S. at 279 (cleaned up). Ms. Legler

learned on October 15 that MSA would not continue to represent her interests in this litigation after the end of the year, and she promptly instructed the undersigned counsel to bring this motion to ensure that she may continue to advance her arguments in defense of the district court's judgment. "Here, the most important circumstance relating to timeliness is that [Ms. Legler] sought to intervene as soon as it became clear that [her] interests would no longer be protected by [MSA]." *Id.* at 279-80 (cleaned up). Indeed, even though Ms. Legler's interests remain represented by MSA at the current time, she brings this motion more than two months in advance of the time that MSA will no longer be able to continue to represent her, in order to ensure that the change in MSA's status does not pose any barrier to this Court's resolution of the pending appeal.

## II. Ms. Legler Seeks to Protect Interests that May Not Be Adequately Represented by the Current Parties

For the reasons discussed above, *supra*, pp. 6-8, Ms. Legler has an interest in defending the judgment of the district court in MSA's favor. She depends on her ability to purchase health insurance through the Exchange to gain the coverage that she needs to pay for costly medications. JA136-137. The provisions of the rule that are at issue in

this appeal would increase her premiums and make it harder for her to afford the medications that she needs. JA117; JA138. In particular, the rules' actuarial value provision would reduce the premium tax credits that she may claim, requiring her to pay more on net for the same level of coverage. *See* JA118-119; JA363; JA551-552.

Her membership association, MSA, obtained a judgment from the district court that operates to protect Ms. Legler from the harms that CMS's rule would otherwise impose upon her. But, after MSA ceases its operations at the end of the year, it is possible that Ms. Legler's interests in the litigation would no longer be adequately represented in this litigation after that date. To be sure, if this Court were to conclude that the Cities or DFA have standing to challenge each of the provisions at issue in this appeal, then any issue posed by MSA's termination of operations would be merely academic. *See Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023) (court may proceed to the merits so long as one plaintiff has standing). But to the extent that MSA's presence as a Plaintiff in this action would prove to be outcome determinative with respect to any of the jurisdictional issues raised in this appeal, the association's changed status may interfere with this

Court's ability to render a final decision that would address Ms. Legler's interest in the action.

## III. The Current Parties Would Not Face Prejudice if Intervention Were to Be Granted

Intervention would serve the interests of all parties in this action. Although this appeal has been fully briefed by the current parties, no additional briefing would be required. Defendants-Appellants have objected to MSA's standing, but they have done so on the ground that the association has not proven that its member, Ms. Legler, would have standing in her own right. *See* Opening Br. 36-38; Reply Br. 7-9. In response, Plaintiffs-Appellees have proven that Ms. Legler would suffer an injury that is traceable to the rule and that is redressable by the district court's judgment, and that therefore MSA has standing to represent her interests as a member of the association. *See* Answering Br. 32-34. Because the parties have already fully briefed the question of Ms. Legler's standing in the course of litigating the question of MSA's standing, this Court may resolve the matter by reference to the briefing that is already on file.

In addition, Defendants-Appellants have expressed an interest in resolving this appeal by the end of the calendar year, and they moved

(with Plaintiffs-Appellee' consent) for expedition to permit this Court to do so. Intervention would permit this Court to issue a decision that completely resolves this case on the schedule that Defendants-Appellants have requested. If Ms. Legler were not to intervene in this action, however—and if the presence or absence of MSA as a live party in this appeal were to prove to be outcome determinative with respect to the jurisdictional issues in this appeal—then this Court would be unable to finally resolve the dispute between the parties. Ms. Legler would be left to bring a separate action asserting the same claims, and this Court's determination of the legality of CMS's rule would be delayed at least for several months, and perhaps longer. Intervention thus serves all parties' interest in a prompt resolution of this appeal.

## CONCLUSION

For the foregoing reasons, Brooke Legler respectfully requests that the Court permit her to intervene as a Plaintiff-Appellee in this action.

Respectfully submitted,

*/s/ Joel McElvain*

JOEL MCELVAIN
CORTNEY ROBINSON HENDERSON
CHRISTINE L. COOGLE
*Democracy Forward Foundation*
*P.O. Box. 34553*
*Washington, DC 20043*
*(202) 448-9090*

October 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,390 words. It complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Joel McElvain*
Joel McElvain

## CERTIFICATE OF SERVICE

I certify that on October 19, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Joel McElvain*
Joel McElvain